UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KEVIN WALLACE | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 5:11-cv-00099 |
| | § | JURY DEMANDED |
| | § | |
| TESORO CORP. | § | |
| | § | |
| *Defendant.* | | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

Plaintiff, KEVIN WALLACE ("Wallace") files this his Original Complaint against Defendant, Tesoro Corp., ("Defendant" or "Tesoro").

### I. INTRODUCTION

1.  This action seeks equitable relief, compensatory damages, special damages, punitive damages, attorney's fees, expert witness fees, taxable costs of court, prejudgment and post-judgment interest for Defendant's retaliation against Plaintiff for whistle blowing activities under Title VIII of the Sarbanes-Oxley Act of 2002, Section 806 of the Corporate and Criminal Fraud Accountability Act of 2002, and 18 U.S.C. § 1514A, *et seq.*

2.  This action is brought under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, *et seq.* ("SOX") and specifically 18 U.S.C. § 1514A (b)(1)(B).

## II. PARTIES

3.     Plaintiff, Kevin Wallace is an individual currently residing in Bexar, County, Texas.

4.     Defendant, Tesoro is a Delaware corporation dually authorized to do business in the State of Texas with its principle place of business and corporate headquarters in San Antonio, Bexar County, Texas. Defendant may be served by certified mail, return receipt requested and/or personal service upon its agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Inco at 211 E. 7th Street, Suite 620, Austin, Texas 78701.

## III. JURISDICTION AND VENUE

5.     This Court has subject jurisdiction in this case pursuant to 28 U.S.C. § 1331 as Plaintiff is bringing this claim under the Sarbanes-Oxley Act, specifically 18 U.S.C. § 1514A (b)(1) (B), which provided federal courts with jurisdiction over such claims without regard to amounts in controversy. The Court has personal jurisdiction over the Defendant since they maintain and operate a business in the State of Texas and because they have purposefully availed themselves of the protections of State of Texas.

6.     Venue is proper in the United States District Court for the Western District of Texas pursuant to 28 U.S.C. § 1391(a) and (b).

## IV. PROCEDURAL PREREQUISITES

7.     All conditions precedent to filing this lawsuit have been met.

8.     Plaintiff filed a complaint, with the Occupational Safety and Health Administration ("OSHA") under the Sarbanes-Oxley Act of 2002 ("SOX") with in ninety (90) days after the alleged violation of SOX occurred.

9.   Plaintiff filed this action more than one hundred eighty (180) days after he filed his complaint with OSHA.

10.  Plaintiff filed this action before the Administrative Review Board issued a final decision on Plaintiff's complaint.

## V. FACTS

11.  Defendant Tesoro Corp. is a publicly traded company. It is traded on the New York Stock Exchange under the ticker symbol TSO.

12.  Tesoro is a company within the meaning of 18 U.S.C. § 1514A in that it is a company with a class of securities under Section 12 of the Securities Exchange Act of 1934 (15 U.S.C. § 78l) and is required to file reports under Section 15 (d) of the Securities Exchange Act of 1934 (15   U.S.C. § 78o(d)).

13.  Defendant Tesoro operates, through its subsidiaries, seven (7) oil refineries in the United States with a combined capacity of approximately 665,000 barrels per day. Their retail-marketing system includes over 880 branded retail stations.

14.  Defendant Tesoro has approximately 17,000 employees world wide.

15.  Defendant Tesoro has approximately 800 employees in its San Antonio, Texas corporate headquarters.

16.  Mr. Wallace was initially hired by Tesoro on or about June 24, 2004.

17.  At the time of his discharge, Mr. Wallace was employed by Defendant Tesoro as its Vice President of Pricing and Commercial Analysis. He was a member of the Marketing Department.

18.  Claude Moreau  was Tesoro's Senior Vice President of Marketing.

19.     Everette Lewis was Tesoro's Executive Vice President and COO.

20.     Tracy Jackson was Tesoro's Vice President of Internal Auditing.

21.     On two occasions Mr. Wallace checked "yes" to retaliation under the Tesoro Annual Certificate of Compliance which is the Tesoro Sarbanes-Oxley/Anti-Trust compliance vehicle: the first time on the 2008 Compliance Statement that he electronically filed on February 7, 2009. Even though Mr. Wallace spelled out the type of retaliation he was enduring, no one from Tesoro ever contacted him to investigate.

22.     Mr. Wallace filed the 2009 statement on March 12, 2010 around 11:00 a.m. He was not able to print out a copy as he was terminated at approx. 5:00 pm that same day. In the 2009 Compliance Statement, Mr. Wallace again checked the box stating "retaliation".

23.     During the interim between the two Compliance filings, as part of his job as Tesoro VP of Pricing and Commercial Analysis, Mr. Wallace investigated the continuing anti-trust issues in Idaho Falls (involving an apparent oral agreement with a customer to match prices with a particular station) as well as discovering taxes collected by Tesoro were being booked as revenue in both the external retail segment (which is a number reported to the SEC) as well as the commercial marketing segment. The practice of booking the taxes as revenue artificially inflated the profits reported.

24.     Claude Moreau, Sr. VP of Marketing, was Mr. Wallace's direct supervisor. Mr. Moreau was the person at Tesoro that retaliated against Mr. Wallace for reporting the anti-trust issues, and Moreau was the person that terminated Mr. Wallace's employment.

25.     Mr. Wallace was instructed by the Tesoro Legal Dept. to keep the anti-trust issues confidential, so he did not speak of them to HR and/or Audit, until after his termination.

26.  Mr. Wallace did keep Tracey Jackson (VP of Internal Audit) informed of critical accounting errors as they were discovered, and she at all times encouraged him to keep the lines of communication open.     At the time of his termination, Mr. Wallace had discovered that the errors reached across to the reported external retail segment, but he had not yet informed Ms. Jackson of this finding due to his intervening termination.

27.   Mr. Wallace reported inappropriate activity in good faith that was appropriate to report and factually correct.  As a result, his confidentiality was not maintained (in violation of Tesoro's Code of Conduct) and he subsequently endured two years of retaliation by Claude Moreau, Sr. VP of Marketing.

28.  Tesoro has misrepresented financial performance internally and externally in reported financial results.

29.  In January/February 2010, Mr. Wallace learned of a pricing issue in Idaho Falls.  Kristi Burchers was involved in the Salt Lake City analysis as pricing manager and drew the connection to the frequent and pressing challenges to her Idaho Falls prices. Mr. Wallace asked Jeff Evans to get involved and work this issue after fully explaining to him the legal implications. Mr. Wallace  also alerted John Moore, the new VP of Wholesale. John Moore told Mr. Wallace that he was certain that a side agreement existed.  John Moore took responsibility to alert Se. VP Claude Moreau as it was intertwined with the contract drawn up for the new Salt Lake location.  This was not an old issue that Mr. Wallace failed to include in his 2009 Certification, but a new 2010 issue that arose in the January/ February 2010 timeframe just prior to his termination.

30.   Mr. Wallace was told by Claude Moreau that the substance of Mr. Wallace's findings created problems for Bruce Smith, CEO, as Smith had informed the Tesoro Board of Directors of different financial results.

31.   Chad Falgout was Tesoro's Vice-President of Marketing - Support/Optimization and a close friend of Claude Moreau. In early 2010, Mr. Wallace brought to light an issue concerning the wholesale pricing structure that Falgout and Moreau were attempting to apply to retail locations in Southern California, incident to Tesoro purchasing Shell stations in that area. One of Mr. Wallace's direct reports. John Luciaini, reported to Mr. Wallace that this pricing mechanism violated Tesoro's compliance with California law (California Anti-Competitive Practices Act). Because Mr. Wallace raised the objection to this pricing mechanism to Falgout, external counsel at Perkins Coie, and internal counsel at Tesoro, the actual financial closing (acquisition) of several Shell stations had to be suspended within 24 hours of the intended closing date.   Later, at an internal staff meeting, Falgout indicated he disagreed with Mr. Wallace's analysis and told Moreau that Tesoro could maintain the stated pricing mechanism despite the law. When it came to Mr. Wallace's opportunity to speak, Moreau abruptly ended the meeting.   This occurred just prior to Kevin 's termination of employment.

32.   Tesoro terminated Mr. Wallace and offered him a severance package, which is not consistent with its own policies and procedures. Mr. Wallace declined the offer of severance due to the requirement that he release all claims attendant to his illegal termination.

## VI. COUNT 1

33.   Sarbanes-Oxley whistleblower retaliation.

34.   Plaintiff reincorporates each of the foregoing paragraphs as if they were set forth fully herein.

35.   Tesoro Corp. has a class of securities registered under Section 12 if the Securities and Exchange Act of 1934 or is required to file reports under Section 15(d) of the Securities and Exchange Act of 1934.

36.   Wallace was an employee of Tesoro Corp., and/or one of its officers, employees, contractors, subcontractors, or agents or was a person whose employment could be affected by Tesoro Corp. or one of its officers, employees, contractors, subcontractors, or agents.

37.   Wallace provided information to persons with supervisory authority over him and persons employed by Tesoro who had the authority to investigate, discover, or terminate misconduct.

38.   Wallace reasonably believed that the information he provided to such persons involved conduct that would constitute a violation of Section 1331, 1343, 1344, and/or 1348, any rule or regulation of the Securities and Exchange Commission, or any provision of Federal Law relating to fraud against shareholders.

39.   Specifically, and without limitation, Wallace's reports of potential anti-trust violations and the booking of taxes collected by Tesoro as revenue in both the external retail and commercial marketing businesses- thus artificially inflating the profit reported by Tesoro in its public filings would constitute such violations.

40.   Tesoro, itself or through its officers, employees, contractors, subcontractors, or agents discriminated against Wallace in the terms and conditions of his employment by creating a hostile work environment and by terminating his employment in retaliation against him for providing such information.

41.   Specifically, at the time of Wallace's termination, Moreau was an officer, employee, or agent of Tesoro.

42.   Specifically, at the time of Wallace's termination, Everette Lewis was an officer, employee, or agent of Tesoro.

43.   Specifically, at the time of Wallace's termination, Tracy Jackson was an officer, employee, or agent of Tesoro.

44.   Accordingly, this lawsuit is authorized under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A (b)(1)(B).

## VII. ATTORNEY'S FEES

45.   Plaintiff reincorporates each of the foregoing paragraphs as if they were set forth fully herein.

46.   Plaintiff is entitled to recover attorney's fees and costs for bringing this action pursuant to the Sarbanes-Oxley Act.

## VIII. JURY DEMAND

47.   Plaintiff demands a jury trial on all issues triable to a jury.

## IX. RELIEF REQUESTED

48.   Accordingly, Wallace respectfully requests that the Court:

a.      Grant judgment in Wallace's favor with regard to his claims pleaded under Sarbanes-Oxley, including all compensatory damages, special and consequential damages necessary to make Wallace whole, including but not limited to any equitable relief he may show himself entitled under those statutes;

b.      Enter an award of attorney's fees, litigation costs, and expert witness fees to Wallace pursuant to 18 U.S.C. § 1514A(c);

c.      For actual and liquidated damages for the period of time provided by law, including appropriate back pay and reimbursement for lost wages, pension, insurance, bonuses, and all other benefits;

d.      Reinstatement, or lieu of reinstatement, front pay and reimbursement of future lost wages, pension, insurance, bonuses, and all other benefits that will be lost in the future;

e.      For compensatory and punitive damages as allowed by law;

f.      For pre-judgment and post-judgment interest as allowed by law;

g.      For Wallace's cost of court and other expenses; and

h.      Award such other and further relief, as this Court deems appropriate.


Respectfully submitted,

**KATZMAN & KATZMAN**

By:_____
Alex Katzman
State Bar No. 00786939
12451 Starcrest Drive, #106
San Antonio, Texas 78216
Telephone: (210) 979-7300

Facsimile:   (210) 979-7357


**THE MCKINNEY LAW FIRM**
    A PROFESSIONAL CORPORATION

By:

Christopher J. McKinney
State Bar No. 00795516
700 East Sonterra, Ste 1221
San Antonio, Texas  78258
Telephone:  (210) 832-0932
Facsimile:   (210) 568-4101
*chris@themckinneylawfirm.com*